IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |  |
|---|---|---|
| **REGINA R. BUSH,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. 05-00535-WS-B |
| | * | |
| **JO ANNE B. BARNHART,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

### REPORT AND RECOMMENDATION

Plaintiff Regina R. Bush ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. and 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on October 27, 2006. Upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

### I.   Procedural History

On June 18, 2003, Plaintiff protectively filed an application for benefits alleging that she has been disabled since December 27, 2002 due to hand injuries (arthrofibrosis of right middle finger and left distal radial and ulnar styloid fractures requiring external fixation). (Tr. 23, 36-37, 60, 70, 194-196). Plaintiff's initial applications were denied and were denied upon reconsideration. (Id. at 23, 36-42). Plaintiff timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 23, 43-44, 197). On August 25, 2004, an administrative hearing was held before Administrative Law Judge James D. Smith ("ALJ" or "ALJ Smith"), which was attended by

Plaintiff, her representative and a vocational expert. (Id. at 221-240). On May 4, 2005, ALJ Smith issued an unfavorable decision, finding that Plaintiff is not disabled. (Id. at 20-33). On August 18, 2005, the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision; thus, the ALJ's decision became the final decision of the Commissioner of Social Security.[1] (Id. at 6-9, 17-19). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.     Background Facts

Plaintiff was born on December 9, 1959 and was 44 years old at the time of the administrative hearing. (Tr. 25, 78, 224). Plaintiff is 5'7" tall and reported weighing 310 pounds. (Id. at 225). Plaintiff has a 12th grade education and past relevant work ("PRW") experience as a certified nursing assistant/home health assistant, day care worker, hand packager and assembly line worker. (Id. at 25, 71-72, 81-82, 94-102, 110-111, 224-225). Plaintiff's reported medications include Lortab, Acetaminophen, Indomethacin, Famotidine, Oxycodone, Hydrocodone, Ibuprofen, Cortizone shot, Advil, Extra Strength Tylenol, Motrin and Vioxx. (Id. at 89-90, 107, 109, 112, 229).

At the August 25, 2004 hearing, Plaintiff testified that her right hand was injured when she worked as a home health assistant. (Id. at 224-225). She received workers' compensation benefits as a result of her injury and reported last working in 2002. (Id.) Plaintiff has undergone two surgeries, one in 2002 and one in 2004, on her right hand, which she reports is her dominant hand. (Tr. 225, 229, 233). According to Plaintiff, since her second surgery, her hand is "[s]till not better"

---

[1]Plaintiff submitted records, from USA and Dr. Barrett, to the Appeals Council. (Id. at 204-220).

and she "[j]ust barely" has use of her right hand. (Id. at 228).[2] She cannot write a letter, cannot hold a pen and write for more than 5 minutes and cannot pick up objects heavier than 2 pounds. (Id.) Plaintiff reported that Dr. Meyers, who treated her for her hand, told her during her last visit in July 2004, that there was nothing else that he could do for her. (Id. at 229).

Additionally, Plaintiff testified that she has problems with her left hand, which she broke during a December 27, 2002 fall in her home. (Id. at 229-231). Plaintiff also injured her shoulder during the fall. (Id. at 230). According to Plaintiff, Dr. McGowin operated on her left hand in 2002, and while she did "pretty well" after the surgery, her left hand still hurts "every now and then." (Tr. 230- 231). Plaintiff reported that due to her left hand, she has problems performing household activities such as sweeping, mopping, cooking or buttoning her clothing. (Id. at 231).

Plaintiff also testified that she has a knot in her right shoulder and that she experiences shoulder pain when she lifts over her head or tries to lift anything. (Id. at 232). Plaintiff further testified that she has also been seen by Dr. Baird for six years for middle back problems, and that he told her she has inflammatory problems but has not recommended any treatment or taken any x-rays. (Id. at 232-233). Plaintiff also reported that she has knee pain, and that while Dr. Baird has examined her left knee, he has never told her what is wrong with it. (Id. at 233).

---

[2]Additional self-reporting records reveal that Plaintiff reported that she is 5'7" tall, weighs 400 pounds and has problems with her right and left hands and wrist. (Id. at 70-77). She has reported that rods in her hands cause her pain when she tries to grab, push, pull, lift, or pick up anything, such that she cannot perform household chores, shop, run errands, drive, do yard work, etc; she needs help getting up and sitting down; she can only stand, walk and sit for 2½ hours; and she needs assistance bathing, dressing, fixing her hair, cooking/preparing meals, performing household chores, yard work, shopping, loading/unloading groceries and driving a car (based on her reports of pain and "Doc's orders . . . no pushing, pulling, grabbing or lifting!"). (Id. at 84-89). She also reported that she cannot perform activities because of her doctor's orders of no pushing, pulling, grabbing or lifting, and has to have assistance to do everything. (Id. at 89). She has constant and excruciating right hand, wrist and shoulder pain, that prevents her from lifting things. (Id. at 90-91).

**III.   Issues on Appeal**

A.   Whether the ALJ erred by failing to find that her shoulder, back, left hip, leg and knee problems were severe impairments?

B.   Whether the ALJ erred by failing to properly consider the effects of Plaintiff's obesity?

**IV.   Analysis**

   **A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

   **B.   Discussion**

An individual who applies for Social Security disability benefits must prove her disability.

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[4] See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the case sub judice, the ALJ found that while Plaintiff suffers from the severe impairment of arthrofibrosis of the right middle finger and left distal radial and ulnar styloid fractures requiring external fixation, her impairments do not meet or medically equal any of the listed impairments in 20 C.F.R., Appx. 1, Subpt. P, Reg. No. 4. (Tr. 32). The ALJ concluded that Plaintiff's other alleged impairments (allegations of pain and related symptomatology in her shoulder, back, left hip and leg, and both knees) are not severe, and that her obesity is not a contributing factor that would be expected to adversely affect the severity of her other impairments. (Id.) The ALJ also determined

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

that Plaintiff's subjective allegations of pain and functional limitations were not fully credible. (Id. at 33). The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light semi-skilled work, and that because her past relevant work ("PRW") as a daycare worker and assembly line worker (light work) was not precluded by this RFC, she was not disabled. (Id.)

**1.      Whether the ALJ erred by failing to find that her shoulder, back, left hip, leg and knee problems were severe impairments?**

Plaintiff contends that the ALJ erred by failing to find that her physical impairments of shoulder, back, left hip, leg and knee pain, are severe impairments. In his decision, the ALJ found that Plaintiff's allegations of pain and related symptomatology in her shoulder, back, left hip, leg and both knees, did not rise to the level of severity required by the regulations to be considered severe impairments, for the following reasons:

> The claimant testified she slipped at home and . . . injured her left shoulder in December 2002 . . . . The claimant also stated that when she tries to lift her left arm overhead, she experiences pain in her shoulder. She stated her treating physician recommended surgery for the shoulder.
>
> The claimant also testified she has back pain and has undergone treatment for approximately six years with Dr. Barnett. Yet, she further reported that she has never had a back x-rayed [sic]. She stated Dr. Barnett also "looked" at her left knee, yet, he did not tell her what was "wrong" with it.
>
> With regard to her ability to sit, stand, and walk, the claimant testified that she cannot sit for prolonged periods as it causes back pain. She stated that she has used a "special" chair for four years and that "regular" chairs irritate her back. The claimant further testified that if she stands for longer than 15 minutes, her legs go numb and that she is "not able to walk" because her "legs give out". With regard to daily activities, the claimant alleged she has done no housework for two years as she is unable to sweep, mop, or cook . . . .
> \* \* \*
> . . . . An impairment is severe . . . it if imposes significant restrictions in the ability to perform basic work activities . . . .
> \* \* \*
> With regard to the claimant's allegations of pain and related symptomatology in her shoulder, back, left hip and leg, and both knees, the evidentiary record reveals the

following:

In February 2003, when seeing Dr. McGowin for her left wrist fracture, the claimant reported she experienced pain in her left shoulder since the December 2002 fall. At that time, physical examination of the shoulder revealed some mild tenderness laterally, but, there was good range of motion of the left shoulder. No x-rays were taken nor were any medications prescribed. Although the claimant continued to see Dr. McGowin on follow-up visits at least twice a month with regard to her left wrist fracture, it was not until her June 5, 2003 visit that Dr. McGowin noted additional concerns about the claimant's shoulder. At that time, he reported the claimant had weak abduction and positive impingement in her left shoulder. A cuff tear was also considered, however, this was not the case after an MRI scan performed on June 12th showed no apparent tear. The claimant was able to move her shoulder with some pain, therefore, Dr. McGowin provided injection therapy. Although the claimant had a favorable response to the injection, Dr. McGowin indicated in his September 2003 office notes that some symptoms had returned as the claimant had occasional pain in the shoulder, yet, she maintained full range of motion. Dr. McGowin also indicated that claimant had reached maximum medical improvement and recommended the claimant return to "regular duty" work beginning October 1, 2003 for a trial basis . . . .

The evidentiary record also reflects that during the July 3, 2003 follow-up visit with Dr. McGowin, the claimant alleged having pain in her back and left leg but further stated that the pain was better with walking. When the claimant returned for a follow-up visit in August 2003, the alleged experiencing pain in her left hip and numbness down the left leg for approximately one month, which as the result of a recent fall. The claimant reported she experienced the pain primarily when sitting for prolonged periods of time. The claimant received an injection in the hip and subsequently reported to Dr. McGowin that it helped "a good bit". In fact, the record contains no additional treatment records regarding the claimant's back pain with radiculopathy until some eight to nine months later, i.e., May 14, 2004. At that time the claimant was seen by Dr. James C. Barrett who reported the claimant's pain evidently "come and goes". He opined the pain was probably of an arthritic-type and prescribed an anti-inflammatory medication . . . .

\* \* \*

Therefore, with regard to the claimant's allegations of pain and related symptomatology in her shoulder, back, left hip and leg, and both knees, it is significant to note that no evidence has been presented to show that these conditions, singly or in combination, resulted in significant, if any, work-related limitations that existed for a period of 12 consecutive months during the period under adjudication.

\* \* \*

First, a considerable disparity exists between claimant's objectively demonstrable, underlying medical conditions(s) and the alleged persistence of her symptomatology. The medical evidence referable to the claimant's impairments does not identify any

>reliable manifestations of a disabling loss of functional capacity resulting from her reported chronic, debilitating symptomatology. The claimant's credibility regarding the nature and extent of her alleged symptomatology is significantly undermined by her contradicting statements . . . as well as the fact that she has voices minimal complaints with regard to her activities of daily living as late of April 10, 2003. . . . The claimant's credibility is further undermined by the lack of persistent and regular medical treatment during the relevant period under consideration. Second, the medical evidence adduced in connection with the claimant's current appeal that is referable to her impairments does not at all establish the existence of impairments at the level of severity she describes. . . both of the claimant's treating orthopedic surgeons . . . McGowin and . . . Meyer, have repeatedly stated the claimant is capable of performing work at the light exertional level of activity with modified duties on the right hand including no pinching or activities involving unprotected heights . . . . Finally, nothing in the record suggests that the claimant's physical impairments have been incapable of being alleviated or controlled with the proper and regular use of prescribed and/or over the counter medications. In fact, the record discloses that such medications have proven successful in assisting the claimant in maintaining control of her conditions and mitigating any accompanying symptomatology. Furthermore, the record contains no evidence of medication side-effects.

(Tr. 26-27, 30-31 (citations omitted)).

A review of the record reveals that the evidence supports the ALJ's conclusion that Plaintiff's alleged shoulder, back, left hip, left leg and knee problems, are not severe impairments. At the second step of the sequential evaluation process, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Eleventh Circuit has held that a claimant's impairment may be considered "not severe" only if it is a slight abnormality which has such a minimal effect on he or she, that it is not expected to interfere with the ability to work, regardless of age, education or work experience. See, e.g., Brady v. Heckler, 724 F.2d 914, 922 (11th Cir. 1984). In McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986), the Eleventh Circuit clarified the severity determination:

>[a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe. Step two is a threshold inquiry. It allows only claims

> based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

Id. at 1031. If an impairment causes only mild effects on a claimant's ability to work, or is amenable to medical treatment, it may be not severe. In Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). A claimant bears the burden of proving that an impairment is severe and more than a mere slight abnormality. Brady, 724 F.2d at 920.[5]

Here, the ALJ thoroughly evaluated the evidence regarding Plaintiff's alleged pain and functional limitations in her shoulder, back, left hip, left leg and both knees, before concluding that she did not have a physical impairment (or combination of same) that had more than a minimal effect on her ability to perform basic work activities. See supra. Additionally, despite Plaintiff's claims of disabling pain, it is significant that she only sought limited and sporadic medical treatment for these alleged physical impairments. First, regarding Plaintiff's shoulder, Dr. McGowin treated Plaintiff from December 2002-April 2004 for her wrist and hand impairment, during which time he noted that she had some pain in her shoulder since her December 2002 fall, but still had a good range of motion with only some mild tenderness laterally. (Tr. 124-139, 181, 193). He found she was "okay" in April 2003, and only had weak abduction and positive impingement in her left shoulder as of June 2003. (Id.) He sent her for a MRI scan of the shoulder in June 2003, which showed no apparent cuff tear or other damage - only "some" impingement. (Id.) She was able to move her shoulder and only had pain with impingement testing; accordingly, he injected her

---

[5]See also SSR 96-3p Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment Is Severe, 1996 WL 374181, *1-2.

shoulder. (Id.)

By July and August 2003, Plaintiff was reporting that the injection helped her shoulder. (Id.) Dr. McGowin's notes reflect mild impingement in her shoulder and that he injected her again. (Id.) His notes further reflect that Plaintiff was not released to work until September 17th, and that he continued her in occupational therapy due to her complaints. (Tr. 124-139, 181, 193). By September 17th, Dr. McGowin noted that Plaintiff had a full range of motion in her shoulder although she reported occasional shoulder pain when she lifts something. (Id.) Accordingly, Dr. McGowin discontinued her therapy and released her to work on October 1, 2003, at "regular duty." (Id.)

*Almost 8 months later*, on May 14, 2004, Plaintiff was seen by Dr. Barrett at which time she reported having some difficulty with her left shoulder, which was causing pain from the back and down the side. (Id. at 182). She reported that the pain "comes and goes." (Id.) Dr. Barrett concluded that Plaintiff was "otherwise doing well" and that the pain was "probably arthritic type of complaint in the cervical spine." (Id.) He gave her Vioxx 50mg daily to see if she would have "definite relief." (Tr. 182).

Contrary to Plaintiff's assertions, neither of her treating doctors, Dr. McGowin nor Dr. Barrett, concluded that her shoulder pain interfered with her ability to work for a consecutive 12 month period. With respect to Plaintiff's alleged back/left side or left leg impairment, she reported to Dr. McGowin, on July 3, 2003, that her back and left side pain was "better with walking." (Tr. 133). Additionally, on September 9, 2003, a State Agency physician completed a Physical Residual Functional Capacity Assessment, wherein he concluded that Plaintiff was somewhat limited in her upper extremities to push/pull (occasionally on left side) and occasionally limited on her left side

10

from reaching in all directions, including overhead. (Id. at 155-162). The physician also concluded that Plaintiff's condition should continue to improve. (Id.)

With respect to Plaintiff's alleged left hip impairment, the records reflect that on one occasion on August 20, 2003, Plaintiff reported to Dr. McGowin, that she had left hip pain. (Id. at 193). By September 17, 2003, Dr. McGowin's notes reflect that Plaintiff reported that her left hip pain was "much improved." (Id.) As with her left hip, the record reveals that Plaintiff reported to Dr. McGowin on one occasion on April 2, 2004, of bilateral knee pain. (Tr. 181). Dr. McGowin's examination revealed that she had some arthritis and a mild effusion in her knees. (Id.) A knee arthroscopy was performed on April 7, 2004, and the results were "indeterminate." (Id.)

In sum, no treating physicians ever found Plaintiff had any work-related functional limitations or restrictions due to her alleged back, shoulder, leg, left hip or knee impairments, or that these alleged impairments significantly limited her physical abilities to do basic work activities for 12 consecutive months.[6] 20 C.F.R. § 404.1520(c). At most, the record reveals that Plaintiff's physical impairments had only mild, occasional or temporary effects on her abilities, and all were amenable to medical treatment. See, e.g., Bridges, 815 F.2d at 625; Brady, 724 F.2d at 920. As such, Plaintiff's claim fails.

---

[6]The undersigned notes further, that the records submitted to the Appeals Council reveal as follows. After her May 2004 visit, Plaintiff did not return to see Dr. Barrett until May 26, 2005, at which time she reported that she had two recent falls, that she had hurt her back in the falls, and that pain from the L2-L4 vertebra "hurts to move" and keeps her from sleeping at night; however, a physical exam revealed no peripheral edema, only back pain, and she was given Mobic and Soma. (Id. at 218-219) . In June 2005, Dr. Barrett noted that while Plaintiff was "doing better," and that a May 2004 x-ray had revealed only that she had regular degenerative changes, degenerative disc disease in the L5-S1 and a small joint effusion in her knee, but that she had no compression fractures or subluxation. (Id. at 216).

**2.     Whether the ALJ erred by failing to properly consider the effects of Plaintiff's obesity?**

Plaintiff contends that the ALJ failed to assess whether her obesity impacts her alleged impairments and her ability to perform work-related functions under SSR 02-1p. Plaintiff however, has failed to present any medical evidence of record in support of this claim, aside from pointing to the fact that she weighs 310 pounds and is 5'7" tall.[7] (Tr. 225). Social Security Regulation ("SSR") 02-1p provides that an ALJ must explain how conclusions regarding a claimant's obesity are reached. SSR 02-1p, 2000 WL 628049, *6 (S.S.A). The regulation requires the ALJ to consider the effects of obesity at steps three and four when combined with other impairments. Id. Section 1.00Q of the Listing of Impairments provides that when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps, including when assessing an individual's RFC, adjudicators must consider any additional and cumulative effects of obesity.[8] 20 C.F.R., Pt. 404, Subpt. P, App. 1; 20 C.F.R. § 404.1523. SSR 02-1p further provides that an ALJ must determine whether obesity prevents an individual from working

---

[7]Obesity is not disabling per se. In order to be considered disabling, it must be found to be a severe impairment, and must be accompanied by work-related functional limitations. See, e.g., Wind v. Barnhart, 133 Fed. Appx. 684, 690-691 (11th Cir. 2005); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). In this case, the record is devoid of any medical evidence which demonstrates that Plaintiff's obesity is severe or that it results or is linked to any work-related limitations.

[8]Listing 1.00Q, regarding obesity, provides as follows:

Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal, respiratory or cardiovascular system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal, respiratory or cardiovascular impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt P. App. 1, Listing 1.00Q.

in the national economy at step five. Id.; SSR 02-1p, 2000 WL 628049.

In the case at hand, the ALJ followed the five-step process in accordance with SSR 02-1p, and concluded that Plaintiff's obesity is not a contributing factor that would be expected to adversely affect the severity of her other impairments. The ALJ noted that:

> The Administrative Law Judge notes the claimant testified at the hearing that she is 5'7" tall and weighs 310 pounds. In the past, the claimant weighed over 400 pounds and the evidentiary record reflects that her weight loss has been beneficial to her overall condition. The Administrative Law Judge finds that the claimant's obesity in and of itself results in an impairment that is not "severe." Reviewing all of the evidence, the Administrative Law Judge finds that the claimant's obesity, when considered in combination with her other impairments, has not resulted in any decrease in her functional capacity to perform work related activities. Consequently, her obesity is not a contributing factor that would be expected to adversely affect the severity of her other impairments.

(Tr. 26-27). The ALJ's decision clearly reveals that in accordance with SSR 02-1p, he explicitly discussed Plaintiff's obesity and sufficiently articulated his assessment of the evidence such that this Court can trace the path of his reasoning as it relates to that issue. (Id.) It is also noteworthy that at the administrative hearing, Plaintiff did not provide any testimony relating to her obesity, nor did she contend that it resulted in any functional limitations. (Id. at 221-240). Similarly, Plaintiff did not allege any problems with her obesity in her benefits applications. (Id. at 60-63, 194-196). Likewise, Plaintiff has not alleged that she suffers from any respiratory, circulatory or endocrinological impairments due to her obesity. Moreover, the record is devoid of any clinical or objective medical evidence indicating any exertional or work-related functional limitations caused by Plaintiff's obesity. See, e.g., Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986). Accordingly, there was simply no basis upon which the ALJ could have concluded that Plaintiff's obesity was a severe impairment accompanied by work-related functional limitations. Thus, Plaintiff's claim fails. See, e.g., James v. Barnhart, 177 Fed. Appx. 875,

878 at note 2 (11th Cir. 2006) (unpublished); Wind v. Barnhart, 133 Fed. Appx. 684, 690-691 (11th Cir. 2005); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

**V.      Conclusion**

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying her claim disability insurance benefits and supplemental security income, is due to be **AFFIRMED.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this the **30th** day of **October, 2006.**

                                          /s/ Sonja F. Bivins
                                        **UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                    /s/SONJA F. BIVINS
                                                  **UNITED STATES MAGISTRATE JUDGE**